APPEALS COURT 
 
 COMMONWEALTH vs. KRISTIAN MARAJ

 
 Docket:
 23-P-1142
 
 
 Dates:
 October 4, 2024 – February 11, 2025
 
 
 Present:
 Vuono, Englander, & Hodgens, JJ.
 
 
 County:
 Norfolk
 

 
 Keywords:
 Jury and Jurors. Constitutional Law, Jury. Statute, Construction. Practice, Criminal, Jury and jurors, Substitution of alternate juror, Instructions to jury. Motor Vehicle, Operation.
 
 

  
      Indictment found and returned in the Superior Court Department on May 30, 2018.
      The case was heard by Douglas H. Wilkins, J.
Amy Codagnone for the defendant.
      Caleb J. Schillinger, Assistant District Attorney, for the Commonwealth.
      ENGLANDER, J.  The defendant, Kristian Maraj, appeals from his conviction in Superior Court of reckless operation of a motor vehicle.  Maraj's conviction resulted from a high-speed chase with a police vehicle, which ended when Maraj's car left the road and crashed into the front porch of a house.  On appeal, Maraj raises two claims of error.  First, he argues that the judge erred and violated his constitutional rights when, over objection, the judge allowed the sole Black person on the jury to be randomly selected as an alternate and thereby excluded from deliberations.  Second, Maraj claims that the judge erred when he instructed the jury that two of the elements of reckless operation of a motor vehicle -- (1) operation of a motor vehicle (2) on a public way -- are "self-explanatory."
      As to the designation of the alternate, there was no error.  The procedure for selecting alternates set out in G. L. c. 234A, § 68, requires the random selection of alternates, and the judge had no discretion to deviate from that required procedure in the circumstances presented.  Nor was the process constitutionally deficient, as the random selection of the Black juror as an alternate did not implicate Maraj's right to a jury drawn from a fair cross section of the community.  We also discern no substantial risk of a miscarriage of justice in the jury instructions.  Accordingly, we affirm the judgment.
      Background.  On March 11, 2018, at approximately 1:50 A.M., Jason Fisher, a detective sergeant with the Randolph Police Department, was patrolling around Randolph in a marked cruiser.  While in a residential neighborhood, Fisher saw a car parked on a small cul-de-sac, without any lights turned on but with the exhaust running.  Fisher turned onto the cul-de-sac; as Fisher approached, the car accelerated and passed him.
      The car turned right from the cul-de-sac onto Grove Street, without its headlights turned on.  Grove Street is a public way maintained by the town of Randolph, with a twenty-five miles per hour speed limit.  Fisher pursued the car, which was driving at a high rate of speed.  The car passed through an intersection without stopping at a stop sign, at which point Fisher determined that the car was traveling too fast for him to pursue safely.  Shortly thereafter, the road turned sharply, and Fisher saw the car's brake lights turn on, then travel upward around twenty feet in the air.  Fisher approached and found that the car had flipped over and crashed into the deck of a house.  Maraj was the driver and sole occupant of the car.  Maraj was initially trapped inside, but ultimately he was able to open the car door and walk, with assistance, to an ambulance.
      The Randolph Police Department accident reconstruction team examined the site and concluded that the minimum speed of the car, before it began to brake and skid, was sixty-five miles per hour.  Before the car was towed, officers found a firearm and a magazine loaded with ammunition in the vehicle.
      Maraj was indicted and in October 2022, he was tried on one charge of reckless operation of a motor vehicle, G. L. c. 90, § 24 (2) (a), along with charges of carrying a firearm without a license and possession of ammunition without a firearm identification card.  The jury found Maraj guilty of the reckless operation charge and acquitted him of the firearms charges.
      Discussion.  1.  Selection of the alternate.  Maraj's principal argument stems from the fact that the sole Black juror who was seated was subsequently randomly selected as the alternate juror over defense counsel's specific objection.  Fourteen jurors were originally seated on the petit jury.  There was only one Black juror, the juror in seat number two (juror number 2).  The record indicates that Maraj is a person of color.  During the trial, defense counsel asked "that the juror in seat two be excluded from the alternate draw."  The judge responded, "Yes, I'm not going to do that."  After defense counsel pointed out that juror number 2 was "the only black person that is on the jury," the judge stated, "[Y]ou appear to be right about that, but I'm not going to pick jurors on the basis of race, so I'm not going to do it.  Okay?" 
      Prior to the selection of the alternates, defense counsel requested again that juror number 2 be removed from the random selection.  Defense counsel stated, 
"[Juror number 2] is the only person of color, she is black, on the jury.  My fear is that if she is removed, even by chance as an alternate that Mr. Maraj will not have a jury -- a fair jury of his peers.  So I -- I formally request at this point that juror number 2 be removed from consideration as an alternate juror.  Race does matter in juries.  Studies show this, that's why we have the challenges, and a formal procedure for that.  I believe that it should extend to this situation as well."
 
The judge responded,
"Okay, and that I believe is an irregular selection of an alternate, which I believe I am not allowed to do.  I believe the law prohibits me from doing what you're asking.  So I'm going to deny your request as a matter of law, not of discretion."
The clerk drew the alternates by lot and juror number 2 was randomly selected as an alternate.
      Maraj contends that the judge had the discretion to insulate a juror from the random selection of alternates, and that the judge erred, under the circumstances, by refusing to exclude juror number 2.  As to the judge's discretion, the defendant advances several theories.  He argues that just as "[t]he trial judge has broad discretion in determining the partiality of a prospective juror," Commonwealth v. Beaz, 69 Mass. App. Ct. 500, 508 (2007), so too does the trial judge have discretion to conduct a nonrandom selection of alternates after considering the race of the seated jurors.  Maraj further notes that G. L. c. 234A, § 68, the statute that sets out the procedure for the selection of alternate jurors, allows for the parties to stipulate to alternative procedures; Maraj argues that this suggests that the judge has discretion to deviate from the statutory procedure.[1]  Finally, Maraj points out that the judge had plenary discretion to designate juror number 2 as the foreperson, and could have prevented the juror from being chosen as an alternate in that way.  See G. L. c. 234A, §§ 68, 68A.
      Maraj's arguments that the judge had discretion in the circumstances are foreclosed by the plain language of G. L. c. 234A, § 68, and by the case law construing it.  With the exception of choosing the foreperson -- discussed infra -- § 68 does not allow the judge discretion to deviate from a procedure that randomly selects alternates from the pool of all available jurors.  Section 68 states that to select alternate jurors, 
"the court shall direct the clerk to place the names of all of the available jurors except the foreperson into a box or drum and to select at random the names of the appropriate number of jurors necessary to reduce the jury to the proper number of members required for deliberation in the particular case" (emphases added).
      "'[S]hall' indicates the absence of discretion."  Garcia v. Executive Office of Hous. & Livable Communities, 495 Mass. 86, 91-92 (2024), quoting Emma v. Massachusetts Parole Bd., 488 Mass. 449, 454 (2021).  Other than selecting the foreperson, the judge did not have the discretion to remove a juror's name from the random selection of alternates.  See Commonwealth v. Santa Maria, 97 Mass. App. Ct. 490, 498-500 (2020).
      The case law is in accord.  In Santa Maria, a juror informed the judge that during voir dire, the juror had forgotten to mention a prior arrest and charge.  Santa Maria, 97 Mass. App. Ct. at 497.  The judge decided, over defense counsel's objection, to designate the juror as the alternate.  Id. at 498.  On appeal, this court concluded that "the nonrandom selection of [the relevant juror] as the alternate juror violated G. L. c. 234A, § 68."  Id.  While the judgments against the defendant nevertheless were affirmed, we emphasized that the judge's action was not permitted under the statute; we held that "although the nonrandom selection violated § 68, we are bound by the statutory requirement that the verdict not be set aside unless the defendant was specially injured or prejudiced by the violation."  Id. at 500-501, citing G. L. c. 234A, § 74.  Cf. Commonwealth v. Alvarado, 50 Mass. App. Ct. 419, 420 (2000) (nonrandom selection of alternate was "irregular," but defendant could not show special injury or prejudice).[2]
      Finally, Maraj argues that the judge erred because the judge should have selected juror number 2 as the foreperson and thereby removed her from the selection of alternates.  See G. L. c. 234A, §§ 68, 68A.  We do not agree that this was error.  First, Maraj did not ask the judge to select juror number 2 as the foreperson, and at trial defense counsel stated that he would not object to letting the jury elect their own foreperson.  Cf. Commonwealth v. Leng, 463 Mass. 779, 787 (2012) ("We look askance on attempts to obtain appellate review on an entirely different theory from that which was presented, without success, at trial").  The judge did not err by not sua sponte appointing juror number 2 as foreperson in these circumstances; indeed, no law suggests that the judge had an obligation to appoint a particular foreperson for any reason.  Beyond that, the defendant's argument that the judge should have selected -- indeed, was required to select -- the jury's foreperson on the basis of the juror's race raises serious constitutional questions.  Cf. Commonwealth v. Soares, 377 Mass. 461, 486, 488-489, cert. denied, 444 U.S. 881 (1979) (use of peremptory challenges to exclude potential jurors on basis of race is unconstitutional).[3]
      Nor did the judge's straightforward application of § 68's procedure for choosing alternate jurors infringe on Maraj's constitutional right to a jury drawn from a fair cross section of the community.  "[T]he right to a jury representative of a cross-section of the community cannot require that each jury include constituents of every group in the population."  Commonwealth v. Williams, 481 Mass. 443, 455-456 (2019), quoting Commonwealth v. Benjamin, 430 Mass. 673, 677 (2000).  Maraj's constitutional rights were not violated in this case, when there was no suggestion that the venire was not composed of a fair cross section of the community, nor was there any suggestion that the Commonwealth used its peremptory challenges to exclude prospective jurors based on their race.
      As we said in Santa Maria, "[r]andom selection of alternate jurors is the fairest mechanism to both parties.  Moreover, the use of nonrandom procedures, contravening § 68's requirement that the process not only be random but appear random, does not promote public confidence in the administration of justice."  Santa Maria, 97 Mass. App. Ct. at 499.  
      2.  Instruction on elements of the offense.  When instructing the jury on the elements of reckless operation of a motor vehicle, the judge stated the following:
"To prove [Maraj] guilty of this offense the Commonwealth must prove three things beyond a reasonable doubt.
"First, Mr. Maraj operated a motor vehicle.
"Second, he did so on a public way.
"And third, he did so in a reckless manner.
"The first two items are self-explanatory."
      Maraj now claims that the judge's failure to give a more fulsome definition of the "operation of a motor vehicle" and "public way" elements was error, and that it created a substantial risk of a miscarriage of justice.  "When reviewing jury instructions, we evaluate the instruction as a whole, looking for the interpretation a reasonable juror would place on the judge's words" (quotation omitted).  Commonwealth v. Fan, 490 Mass. 433, 453 (2022), quoting Commonwealth v. Odgren, 483 Mass. 41, 46 (2019).  "Judges have broad discretion in framing jury instructions, including determining the appropriate degree of elaboration."  Commonwealth v. Toolan, 490 Mass. 698, 708 (2022).
      Even assuming that the instructions as to those elements were lacking, the instructions given did not create a substantial risk of a miscarriage of justice.[4]  There was overwhelming evidence at trial that Maraj drove a car on two roads that are public ways maintained by the town of Randolph.  Maraj has not suggested how a different, more elaborate instruction from the judge might have led to a different result at trial.  See Commonwealth v. Azar, 435 Mass. 675, 687-688 (2002), S.C., 444 Mass. 72 (2005).  See also Commonwealth v. Desiderio, 491 Mass. 809, 820 (2023).
 
Judgment affirmed. 
footnotes

          [1] Section 68 reads, in relevant part, "Nothing in this section shall prevent the court from entering a valid judgment . . . based upon procedures other than that specified in this section where all parties have by stipulation agreed . . . to such procedures."
          [2] Commonwealth v. The Ngoc Tran, 471 Mass. 179 (2015), is not to the contrary.  In The Ngoc Tran, an apparently sleeping juror was selected, nonrandomly, as an alternate, with the consent of defendant's trial counsel; on appeal, the defendant argued that the nonrandom selection of the alternate was error.  Id. at 189.  While the court affirmed the judgments, it held that this procedure was irregular but that it did not create a substantial likelihood of a miscarriage of justice.  See id. at 189-190.  See also Commonwealth v. Stewart, 94 Mass. App. Ct. 485, 490 (2018).
               [3] For the same reason, although the defendant points out that the last sentence in § 68 states, at least in some circumstances, that the process for choosing alternate jurors can be varied by stipulation, we question whether the parties could be allowed to stipulate to the inclusion of a particular juror on the basis of their race.  In any event, here Maraj never asked the Commonwealth to stipulate to the removal of juror number 2 from the selection of alternates, and thus this clause of § 68 is inapplicable.
          [4] Although we do not need to determine the propriety of the jury instructions in the circumstances, we note that further elaboration of these elements will generally be required.  See Instruction 5.260 of the Criminal Model Jury Instructions for Use in the District Court (2024).